# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UFCW LOCAL 1500 WELFARE FUND, on behalf of itself and all others similarly situated,<br><br>　　　　　*Plaintiff*,<br><br>　v.<br><br>AMGEN INC., TEVA PHARMACEUTICALS USA., INC., WATSON LABORATORIES, INC., ACTAVIS INC., and ACTAVIS PHARMA INC.,<br><br>　　　　　*Defendants*. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff UFCW Local 1500 Welfare Fund, on behalf of itself and all others similarly situated, files this Complaint against Defendants Amgen Inc. ("Amgen"), Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis, Inc., and Actavis Pharma, Inc. (collectively, "Teva"). Plaintiff's claims arise from Defendants' anticompetitive scheme to restrain competition in the market for Sensipar® and its AB-rated generic equivalents sold in the United States. Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters.

## I.   NATURE OF THE ACTION

1.     Plaintiff seeks damages and equitable relief arising from Defendants' anticompetitive agreement, which eliminated generic competition in the United States for branded and generic versions of Sensipar (cinacalcet hydrochloride tablets). Sensipar is a drug used to treat certain conditions associated with chronic kidney disease and thyroid cancer.

2.     Amgen received FDA approval for Sensipar in March 2004. After launch, Sensipar's sales grew rapidly. As of 2017, Amgen's U.S. sales of Sensipar exceeded $1.3 billion annually.

3.     Because Sensipar was a blockbuster drug, numerous generic manufacturers filed Abbreviated New Drug Applications ("ANDAs") with the FDA seeking the approval of generic versions of Sensipar. Teva was one such generic. Other generic manufacturers filing ANDAs included Aurobindo Pharma, Hetero Labs, Apotex, Sun Pharmaceutical Industries, Cipla Ltd., Mylan Pharmaceuticals, Amneal Pharmaceuticals, Dr. Reddy's Laboratories, Breckenridge Pharmaceutical, Micro Labs, Piramal Healthcare, Strides Pharma, Ajanta Pharma, and Zydus Pharmaceuticals.

4.     As part of their applications, these generic manufacturers were required to make certain certifications against the patents covering Sensipar. Among these patents was U.S. Patent

No. 9,375,405 ("the '405 patent"), "Rapid dissolution formulation of a calcium receptor-active compound." Generic manufacturers filed "Paragraph IV" certifications against the '405 patent, stating that the patent was invalid, unenforceable, or not infringed by the proposed ANDA applicants' generics.

5.      Amgen sued each generic manufacturer that filed an ANDA for allegedly infringing the '405 patent. While many of the generics thereafter settled with Amgen, a few—including Teva, Amneal, Piramal, and Zydus—continued litigating. A bench trial in the Court (Goldberg, D.J.) was held in March 2018.  After the submission of post-trial briefs, in July 2018 the Court issued an opinion, finding that Teva, Amneal, and Piramal's generic versions of Sensipar did not infringe the '405 patent. In September 2018, Amgen appealed the Court's non-infringement ruling to the Federal Circuit.[1]

6.      With Amgen's appeal pending, on December 27, 2018, the FDA approved Teva's ANDA for a generic version of Sensipar. The recipient of a non-infringement judgment, Teva immediately launched its generic product. During the one week that followed, Teva flooded the market with roughly six weeks of product sales. Teva itself reportedly realized approximately **$59 million** in profits (assuming at 25% discount off Sensipar's price), while Amgen lost an estimated **$79 million** in profits.[2] With Teva competing in the market, Amgen had limited options: either apply to the trial or appellate court for a stay of the non-infringement order and an injunction against Teva—or engage in self-help.

---

[1] *Amgen Inc. v. Amneal Pharms. LLC, et al.*, No. 1:16-cv-00853 (D. Del.), Dkt. #397. The Court also found that Zydus's proposed generic product would infringe the '405 patent. Zydus has appealed that part of the decision to the Federal Circuit. *See Amgen Inc. v. Amneal Pharmaceuticals LLC, et al.*, No. 1:16-cv-00853 (D. Del.), Dkt. #406.

[2] Sue Sutter, *Launch Abbreviated: Teva Halts US Generic Sensipar Sales After Patent Deal With Amgen*, Pink Sheet (Jan. 3, 2019).

7. Instead of applying for relief in court, Amgen chose self-help—and broke the law. On January 2, 2019, Teva and Amgen entered a confidential agreement in which Teva agreed to stop selling its generic version of Sensipar. Public reports also stated that the agreement: (1) ended Amgen's appeal against Teva; (2) required Teva to delay any further sales for nearly two and a half years, until mid-year 2021; (3) called on Teva to pay Amgen an undisclosed sum; and (4) called on Amgen to pay Teva for licenses to other Teva products.

8. Amgen's quickly-reached deal with Teva re-established and maintained Amgen's brand monopoly. Moreover, the deal eliminated not only Teva as a competitor but other generics as well. Amgen's '405 patent action settlements, include acceleration clauses, which permit the generics to enter the market after a short delay if another generic, like Teva, launched. The hasty deal between Amgen and Teva avoided triggering the acceleration clauses, thereby preventing other settling generics from launching their products. Amgen and Teva thus stopped other generics from entering and driving the price of Sensipar well below Teva's discount.

9. Absent Defendants' unlawful agreement, Plaintiff and the members of the Classes would have been able to purchase generic Sensipar tablets during the period after January 2, 2019 at significantly lower prices than Amgen has charged since then. Indeed, the injury to Plaintiff and the Classes is ongoing, as there still is no generic alternative to Amgen's branded Sensipar available to purchase.

10. An agreement by competing companies to cease competing is "anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other."[3] Accordingly, to redress the economic injury Defendants have already caused—and continue to cause—Plaintiff, on behalf of

---

[3] *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990).

itself and all others similarly situated, seeks injunctive and other equitable relief under the federal antitrust laws, as well as damages and other monetary relief under state antitrust, consumer protection, and common laws.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 because this action seeks injunctive and equitable relief under the Clayton Act, 15 U.S.C. § 26. This Court also has jurisdiction under Clayton Act § 12, 15 U.S.C. § 22.

12.    This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Damages Class exceeds $5,000,000, and at least one member of the Damages Class is a citizen of a state different from that of one of Defendants. This Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

13.    Venue is appropriate in this District under 15 U.S.C. §§ 15(a), 22 and 28 U.S.C. §1391(b). Defendants reside, transact business, are found, or have agents within this District, and a portion of the affected interstate trade and commerce discussed below was carried out in this District. Defendants' conduct, as described in this Complaint, was within the flow of, was intended to, and did have a substantial effect on, the interstate commerce of the United States, including in this District. Moreover, the effects of Defendants' conduct on interstate trade or commerce are ongoing.

14.    This Court has personal jurisdiction over each Defendant. Each Defendant has transacted business, maintained substantial contacts, or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. The scheme and conspiracy have been directed at, and have had the intended effect of causing injury

to, persons residing in, located in, or doing business throughout the United States, including in this District.

## III.    THE PARTIES

15.    Plaintiff UFCW Local 1500 Welfare Fund ("**Local 1500**") is an employee welfare benefits fund with its principal place of business at 425 Merrick Avenue, Westbury, New York 11590. Local 1500 provides nearly 23,000 plan participants with health and welfare benefits and, with 15,000 members, is the largest grocery union in New York. During the Class Period, Local 1500 purchased and paid for some or all of the purchase price of Sensipar, thereby suffering injury to its business and property. Local 1500 paid and reimbursed more for these products than it would have absent Defendants' anticompetitive conduct.

16.    Defendant Amgen Inc. ("**Amgen**") is a Delaware corporation with its principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320. Amgen is the holder of NDA #021688 and sells Sensipar throughout the United States.

17.    Defendant Teva Pharmaceuticals USA, Inc. ("**Teva Pharmaceuticals**") is a Delaware corporation with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454. Teva Pharmaceuticals launched generic Sensipar at the end of 2018 and entered the agreement with Amgen, from which this action arises. The relation between Teva Pharmaceuticals and the non-Amgen defendants is described below.

18.    Defendant Watson Laboratories, Inc. ("**Watson**") is a Nevada corporation with its principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054. Watson is a direct or indirect subsidiary of Teva Pharmaceuticals. Watson is a defendant in Amgen's Sensipar patent infringement suit and is a beneficiary, directly or indirectly, of the Amgen-Teva agreement from which this action arises. Watson is the holder of ANDA #204377 for generic Sensipar tablets.

19.     Defendant Actavis, Inc. ("**Actavis**") is a Nevada corporation with its principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054. Actavis is a direct or indirect subsidiary of Teva Pharmaceuticals. Actavis is a defendant in Amgen's Sensipar patent infringement suit and is a beneficiary, directly or indirectly, of the Amgen-Teva agreement from which this action arises.

20.     Defendant Actavis Pharma, Inc. ("**Actavis Pharma**") is a Delaware corporation with its principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054. Actavis Pharma is a direct or indirect subsidiary of Teva Pharmaceuticals. Actavis Pharma is a defendant in Amgen's Sensipar patent infringement suit and is a beneficiary, directly or indirectly, of the Amgen-Teva agreement from which this action arises. Actavis Pharma is the packager of Teva's generic Sensipar.

21.     Defendants Teva Pharmaceuticals, Watson, Actavis, and Actavis Pharma are collectively referred to as "**Teva**." Between December 27, 2018 and January 2, 2019, Teva sold throughout the United States generic Sensipar under Watson's ANDA.

22.     Defendants Amgen and Teva are collectively referred to as "**Defendants**."

23.     All of Defendants' actions described in this Complaint are part of, and in furtherance of, the unlawful conduct alleged in this Complaint. These actions were authorized, ordered, or undertaken by Defendants' various officers, agents, employees, or other representatives while engaged in the management of Defendants' affairs (or those of their predecessors-in-interest) within the course and scope of their duties and employment or with the actual, apparent, and/or ostensible authority of Defendants.

## IV.     FACTUAL ALLEGATIONS

### A.     Amgen Launches Sensipar and Earns Billions of Dollars

24.     In March 2004, Amgen received FDA approval for New Drug Application #021688 for Sensipar tablets. Sensipar is indicated for the treatment of secondary hyperparathyroidism in patients with chronic kidney disease on dialysis, and the treatment of hypercalcemia in patients with parathyroid carcinoma. Amgen currently markets Sensipar in three strengths: 30 mg, 60 mg, and 90 mg.

25.     Beginning in April 2004, Amgen marketed, distributed, and sold Sensipar tablets throughout the United States. Sales of Sensipar in the U.S. grew rapidly, ultimately reaching over $1.3 billion annually in 2017.

### B.     Amgen Acquires the '405 Patent

26.     The U.S. Patent and Trademark Office ("PTO") issued the '405 patent in 2016. The '405 patent purportedly describes "a pharmaceutical composition compromising a therapeutically effective amount of calcium receptor-active compound and at least one pharmaceutically acceptable excipient, wherein the composition has a controlled dissolution profile."[4] The '405 patent was assigned to Amgen, and Amgen is the owner of the '405 patent. Amgen listed the patent in the Orange Book.

### C.     Generic Manufacturers Seek FDA Approval for Generic Versions of Sensipar

27.     Pharmaceutical companies can seek FDA approval of generic versions of a brand drug by filing an ANDA. To have an ANDA approved, a company must demonstrate, among other things, that its proposed generic is therapeutically equivalent to the brand drug. Beginning at least as early as March 2008, over a dozen generic drug manufacturers filed ANDAs seeking

---

[4] Abstract, United States Patent No. 9,375,405.

approval of generic versions of Sensipar. These manufacturers included (among others) Teva, Aurobindo Pharma, Alkem Laboratories, Hetero Labs, Apotex Corp., Sun Pharmaceutical Industries, Lupin Pharmaceuticals, Cipla Ltd., Macleods Pharma, Mylan Pharmaceuticals, Amneal Pharmaceuticals, Dr. Reddy's Laboratories, Breckenridge Pharmaceutical, Micro Labs, Piramal Healthcare, Strides Pharma, Ajanta Pharma, Torrent Pharma, Heritage-Emcure, and Zydus Pharmaceuticals.

28.     As part of their ANDAs, each manufacturer submitted a Paragraph IV certification against Amgen's '405 patent. In these Paragraph IV certifications, each ANDA applicant represented that the '405 patent was invalid, unenforceable, or not infringed by the generic's proposed ANDA product.

**D.    Amgen Sues the Generic ANDA Applicants for Infringement of the '405 Patent**

29.     Each ANDA applicant provided notice of its respective Paragraph IV certifications to Amgen. Because filing a Paragraph IV certification constitutes an act of infringement, *see* 35 U.S.C. § 271(e), upon receipt of these notices, Amgen sued each generic ANDA applicant for patent infringement.

30.     As the patent litigations continued, certain generic manufacturers settled with Amgen. The table below lists the generic companies that settled with Amgen, as well as the dates that Amgen's infringement actions were dismissed:

| Generic Company | Date of Dismissal |
|---|---|
| Aurobindo Pharma | March 23, 2018 |
| Cipla Ltd. | March 5, 2018 |
| Apotex Corp. | September 11, 2017 |

| Generic Company | Date of Dismissal |
|---|---|
| Sun Pharmaceutical | November 2, 2017 |
| Mylan Pharmaceuticals | March 5, 2018 |
| Breckenridge Pharmaceutical | September 21, 2017 |
| Dr. Reddy's Laboratories | March 5, 2018 |
| Strides Pharma | March 5, 2018 |
| Hetero Labs | November 2, 2017 |
| Ajanta Pharma | November 9, 2017 |
| Micro Labs | September 20, 2017 |
| Alkem Laboratories | May 9, 2018 |
| Lupin Pharmaceuticals | April 23, 2018 |
| Macleods Pharma | April 10, 2018 |
| Torrent Pharma | June 12, 2018 |
| Heritage-Emcure | December 7, 2018 |

31.    Certain generic manufacturers, as part of their settlements with Amgen, received acceleration clauses that permit them to market their generic versions of Sensipar before their settlement-prescribed market entry dates. One condition that permits earlier entry is the launch of a competing generic version of Sensipar. As is typical, these acceleration clauses build in a short delay period, during which the settling generics must refrain from sales in order to permit the brand the opportunity to seek judicial relief, if warranted, to stop the generic that launched.

32.    In a 2018 SEC quarterly filing, Amgen disclosed that in the consent judgments with certain generic manufacturers (including Cipla, Strides, and Aurobindo):

> [T]he parties stipulated to an entry of judgment of infringement
> and validity of the '405 Patent and an injunction prohibiting the
> manufacture, use, sale, offer to sell, importation of, or distribution
> into the United States of the applicable defendants' cinacalcet
> product during the term of the '405 Patent ***unless specifically
> authorized pursuant to the confidential settlement agreement***.[5]

The bold, italicized language reflects, among other things, the parties' agreements to acceleration

clauses. Indeed, an Alliance Bernstein analyst has stated that Amgen's Sensipar settlements "all

sensibly contain acceleration clauses, where the settling generic can launch if another generic

enters the market."[6]

33.      Although many generic manufacturers settled with Amgen, others—Teva,

Aurobindo, Amneal, Piramal, and Zydus—continued litigating through a four-day bench trial,

held in March 2018. In July 2018, the Court found that Teva, Amneal, and Piramal did not

infringe the '405 patent.[7] A copy of the ruling is attached as **Exhibit 1**. In September 2018,

Amgen appealed the Court's ruling of non-infringement in favor of Teva, Amneal, and Piramal

to the Federal Circuit. That appeal is pending.

**E.      Teva Receives FDA Final Approval and Launches Its Generic Version of Sensipar**

34.      Because Teva, Amneal, and Piramal had received non-infringement rulings, these

manufacturers needed only to obtain FDA final approval of their ANDAs to launch their generic

versions of Sensipar, regardless of the pendency of Amgen's appeal. On December 27, 2018, the

---

[5] Amgen SEC Form 10-Q at 25-26 (filed Apr. 25, 2018), http://investors.amgen.com/phoenix.zhtml?c=61656&p=irol-SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdlPTEyMjAxMjc1JkRTRVE9MCZTRVE9MCZTUURFU0M9U0VDVElPTl9FTlRJUkUmc3Vic2lkPTU3 (emphasis added).

[6] Sutter, *supra* note 2.

[7] The Court also found that Zydus had infringed the '405 Patent, but Zydus is currently appealing that ruling.

FDA granted final approval to Teva's ANDA for generic Sensipar. Upon receiving approval, Teva launched its generic version the drug.

35.     Over an approximately one-week period, Teva sold roughly **six weeks'** worth of generic Sensipar, realizing an estimated **$59 million** in profits, assuming a 25% discount off Sensipar's price. Teva's launch also caused Amgen to lose an estimated **$79 million** in profits.[8] For drug purchasers and insurers, the benefits of Teva's launch were immediate, saving millions of dollars by purchasing—or reimbursing purchases of—Teva's generic product.

36.     Moreover, had Teva continued selling generic Sensipar, Teva's entry would have triggered the acceleration clauses in settlements Amgen had with other generic manufacturers. If the other settling generics entered, the price for generic versions of Sensipar would have dropped significantly below that offered by Teva, as is typical when multiple generics compete.[9] In addition, as more generics entered the market to compete, Amgen's share of branded and generic Sensipar tablet sales would have eroded by 90%.[10] Therefore, Amgen had to move quickly once Teva launched—both to stop sales by Teva and to avoid triggering the acceleration clauses in its patent settlements with other generics.

## F.     Amgen and Teva Enter an Unlawful Market Division Agreement to Eliminate and Delay Generic Competition

37.     Having lost against Teva at trial, to stop Teva's sales of its competing generic product, Amgen had to either persuade the district court or the Federal Circuit to stay the non-infringement ruling and to enjoin Teva's sales—or engage in self-help. Amgen chose the latter

---

[8] Sutter, *supra* note 2.

[9] FTC Staff Study, Pay-for-Delay: How Drug Company Pay-Offs Cost Consumers Billions (Jan. 2010), at 8, https://www.ftc.gov/reports/pay-delay-how-drug-company-pay-offs-cost-consumers-billions-federal-trade-commission-staff ("Publicly available information about recent generic launches suggests that a generic market typically matures about one year after the first entrant comes on the market. The generic penetration rate at that point is about 90% on average . . .").

[10] *Id.*

and negotiated an agreement to end Teva's competitive threat and keep Teva off the market for an extended period of time.

38.     On January 2, 2019, Amgen and Teva executed an agreement that ended competition from Teva's generic product. Under the agreement, Amgen also agreed to drop its appeal of the Court's non-infringement decision as it related to Teva and pay Teva for licenses to other Teva products. In exchange, Teva agreed to (1) cease all sales of generic Sensipar; (2) delay all future sales until mid-year 2021—*i.e.*, two and one-half years; and (3) pay Amgen an undisclosed sum of money, which apparently represented a portion of Teva's generic Sensipar sales, to Amgen.[11]

39.     Thus, as a result of the agreement:

(a)     Amgen eliminated existing generic competition from Teva, which was costing it tens of millions of dollars in lost profits;

(b)     Amgen also eliminated imminent competition by other generics, whose acceleration clauses otherwise would have triggered and allowed them to compete as well;

(c)     Teva retained tens of millions of dollars in profits from selling six weeks' worth of product in a week;

(d)     Teva eliminated the risk that the Federal Circuit might overturn the favorable non-infringement ruling on the '405 patent;

(e)     Teva secured both a certain entry date comparable to the dates that the other generics who had settled received and, in all likelihood, an acceleration clause that assured Teva's earlier entry if another generic launched first; and

---

[11] Sue Sutter, *Launch Abbreviated: Teva Halts US Generic Sensipar Sales After Patent Deal With Amgen*, Pink Sheet (Jan. 3, 2019).

(f)     Teva received additional value from Amgen's agreement to pay Teva for licenses to other Teva products.

40.     Simply put, two competitors—Amgen and Teva—agreed to divide the market for Sensipar and Teva's generic version of the product. Amgen received Teva's promise not to enter for another two and one-half years, until mid-2021, unless another generic broke Amgen's monopoly by launching first. By its agreement with Teva, Amgen maintained its monopoly of branded and generic Sensipar sales.

41.     A week after entering their illegal agreement, Amgen and Teva applied jointly to the Court to vacate its non-infringement judgment in favor of Teva and, instead, to enter a judgment stating that Teva's "manufacture, use, sale, offer to sell, and distribution of [its generic Sensipar] in the United States and importation of [its generic Sensipar] into the United States, **would infringe** the ['405] Patent."[12] Defendants' attempt to rewrite the Court's trial ruling confirms the anticompetitive intent underlying their market division agreement.

42.     The Amgen-Teva agreement did not go unnoticed by the other generics that were blocked from entering the market. In January 2019, Cipla Ltd. filed a complaint against Amgen, alleging, among other claims, that the Amgen-Teva agreement violated the antitrust laws.[13] Cipla Ltd. also opposed Defendants' motion to vacate the district court's non-infringement ruling, as did Sun Pharmaceutical, another generic that had settled with Amgen.

43.     The Amgen-Teva market division agreement injured Plaintiff and the members of the Classes. They lost the ability to buy Teva's less expensive generic version of Sensipar. Moreover, but for the unlawful agreement, Teva's sales would have allowed market entry by

---

[12] *Amgen Inc. v. Amneal Pharmaceuticals LLC*, No. 16-853, ECF No. 412 (D. Del., filed Jan. 9, 2019) (emphasis added).

[13] *See Cipla Ltd. v. Amgen Inc.*, No. 19-cv-00044 (D. Del.).

other generic manufactures, further driving the price down.  At least Aurobindo Pharma, Cipla

Ltd., Mylan Pharmaceutical, Strides Pharma, and Sun Pharmaceutical each had FDA final

approval at the time of Teva's launch, and Teva's continued sales would have triggered the

acceleration clauses in their settlements with Amgen. The resulting increased generic

competition would have driven down the prices of generic versions of Sensipar below Teva's

discount. Today, however, there is no such competition. Defendants saw to that on January 2,

2019.

## V.    THE ANTICOMPETITIVE EFFECTS ON INTERSTATE AND INTRASTATE COMMERCE

44.    Defendants' anticompetitive scheme had the purpose and effect of unreasonably

restraining trade by eliminating competition between Amgen and generic competitors. But for

the market division agreement, Teva would have continued selling its generic Sensipar after

January 2, 2019, and other FDA-approved generics would have soon launched their own generic

versions of Sensipar.

45.    But for Defendants' illegal conduct, Plaintiff and members of the Classes would

have paid less for branded and generic versions of Sensipar. Defendants' conduct proximately

caused Plaintiff's and the Classes' injuries because it forced them to pay tens of millions of

dollars in overcharges on purchases of Amgen's branded Sensipar.

46.    If Defendants had not blocked generic competition for branded Sensipar, Plaintiff

and members of the Classes would have paid less for cinacalcet hydrochloride tablets by: (a)

purchasing less-expensive generic versions of Sensipar instead of branded Sensipar and (b)

purchasing generic Sensipar at lower prices sooner.

47.     As a result of the delay in generic competition caused by Defendants' anticompetitive scheme, Plaintiff and members of the Classes paid, and continue to pay, more for branded and generic Sensipar than they would have paid absent Defendants' illegal conduct.[14]

48.     Defendants' restraints of competition in the market for branded and generic versions of Sensipar have substantially affected both interstate and intrastate commerce.

49.     At all material times, Amgen manufactured, promoted, distributed, and sold substantial amounts of branded Sensipar in a continuous and uninterrupted flow of commerce across state lines and throughout the United States. Defendants' anticompetitive conduct also had substantial intrastate effects in every state of purchase in that, among other things, retailers within each state were foreclosed from offering less-expensive generic versions of Sensipar to purchasers within each state, which directly impacted and disrupted commerce for consumers and third-party payors within each state.

50.     At all material times, Defendants transmitted funds and contracts, invoices, and other forms of business communications and transactions in a continuous and uninterrupted flow of commerce across state lines in connection with the sale of branded and generic versions of Sensipar.

51.     Economics recognizes that any overcharge at a higher level of distribution generally results in higher prices at every level below. Professor Herbert Hovenkamp explains that "[e]very person at every stage in the chain will be poorer" as a result of the anticompetitive price at the top.[15] Professor Hovenkamp also states that "[t]heoretically, one can calculate the

---

[14] Teva's generic version of Sensipar remained in the distribution "pipeline" even after Teva entered its agreement with Amgen. The price for this pipeline product was and is higher than it would have been if other generics had entered. Thus, members of the Classes who purchase or reimburse for the pipeline product also sustain injury.

[15] *See* Herbert Hovenkamp, *Federal Antitrust Policy: The Law of Competition and Its Practice*, at 564 (1994).

percentage of any overcharge that a firm at one distribution level will pass on to those at the next level."[16] Here, wholesalers and retailers passed on the inflated prices of branded and generic versions of Sensipar to Plaintiff and members of the Classes.

52.     Defendants' unlawful agreement enabled Amgen to charge consumers and third-party payors prices in excess of what they otherwise would have been able to charge absent the Defendants' agreement. These prices were inflated as a direct and foreseeable result of Defendants' anticompetitive conduct.

## VI.   MONOPOLY POWER AND MARKET DEFINITION

53.     To the extent the conduct here may be held subject to the Rule of Reason—and thus requires pleading a relevant product and geographical market—the relevant product market is cinacalcet hydrochloride tablets in 30 mg, 60 mg, and 90 mg strengths, including branded Sensipar and its bioequivalent (*i.e.*, AB-rated) generic versions of Sensipar. The relevant geographic market is the United States, including its territories, possessions, and the Commonwealth of Puerto Rico.

54.     At all relevant times, Amgen has had monopoly power over the market for cinacalcet hydrochloride tablets. Direct evidence of Amgen's monopoly power includes, among other things, the abnormally-high price-cost margins enjoyed by Amgen prior to entry of generic versions of Sensipar and Amgen's ability to profitably maintain the price of Sensipar above competitive levels.

55.     A small but significant non-transitory price increase above the competitive level for Sensipar by Amgen would not cause a loss of sales sufficient to make the price increase unprofitable.

---

[16] *Id.*

56.     Other drugs that are not AB-rated to Sensipar cannot be substituted automatically for Sensipar by pharmacists and do not exhibit substantial cross-price elasticity of demand with respect to Sensipar. Thus, they are not economic substitutes for, nor reasonably interchangeable with, Sensipar.

57.     Pharmaceutical products with cinacalcet hydrochloride as the active ingredient have pharmacological properties that differentiate them from other drugs for treating secondary hyperparathyroidism and hypercalcemia. The existence of other products indicated for the treatment of secondary hyperparathyroidism in patients with chronic kidney disease and hypercalcemia in patients with parathyroid carcinoma or other illnesses has not significantly constrained Amgen's pricing of Sensipar.

58.     Amgen needed to control only Sensipar and its AB-rated generic equivalents, and no other products, in order to maintain the price of Sensipar profitably at supracompetitive prices. Only the market entry of a competing, AB-rated generic version of Sensipar would render Amgen unable to profitably maintain its prices of Sensipar without losing substantial sales.

59.     Amgen, at all relevant times, enjoyed high barriers to entry with respect to competition to the above-defined relevant product market due to patent and other regulatory protections and high costs of entry and expansion.

60.     Amgen has maintained and exercised the power to exclude and restrict competition to Sensipar and AB-rated generics.

61.     At all relevant times, other than the roughly one-week period of Teva's sales, Amgen's market share in the relevant market was at or near 100%.

## VII.   CLASS ACTION ALLEGATIONS

62.   Plaintiff brings this action on behalf of itself and all others similarly situated as a

class action under Rules 23(a), (b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on

behalf of the following classes (the "Classes"):

### The Injunction Class

All persons and entities that indirectly purchased, paid, and/or
provided reimbursement for some or all of the purchase price of
Sensipar or its AB-rated generic equivalents from Defendants,
beginning at least as early as January 2, 2019 until the effects of
Defendants' conduct cease ("Class Period"), anywhere in the
United States.

### The Damages Class

All persons and entities that indirectly purchased, paid, and/or
provided reimbursement for some or all of the purchase price of
Sensipar or its AB-rated generic equivalents from Defendants,
beginning at least as early as January 2, 2019 until the effects of
Defendants' conduct cease ("Class Period"), in the District of
Columbia, Puerto Rico, or any of the following states and
commonwealths: Alabama, Alaska, Arizona, Arkansas, California,
Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho,
Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland,
Massachusetts, Michigan, Minnesota, Mississippi, Missouri,
Montana, Nebraska, Nevada, New Hampshire, New Jersey, New
Mexico, New York, North Carolina, North Dakota, Oklahoma,
Oregon, Pennsylvania, Rhode Island, South Carolina, South
Dakota, Texas, Tennessee, Utah, Vermont, Virginia, Washington,
West Virginia, Wisconsin, or Wyoming.

63.   The following persons and entities are excluded from each of the above-described

proposed Classes:

(a)   Defendants and their counsel, officers, directors, management, employees,

subsidiaries, or affiliates;

(b)   All governmental entities, except for government-funded employee benefit

plans;

(c)     All persons or entities who purchased Sensipar for purposes of resale or directly from Defendants or their affiliates;

(d)     Fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);

(e)     Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

(f)     Pharmacy Benefit Managers;

(g)     All Counsel of Record; and

(h)     The Court, Court personnel, and any member of their immediate families.

64.     Members of the Classes are so numerous and geographically dispersed that joinder of all members of the Classes is impracticable. Plaintiff believes that there are thousands of members of the Classes widely dispersed throughout the United States. Moreover, given the costs of complex antitrust litigation, it would be uneconomic for many plaintiffs to bring individual claims and join them together.

65.     Plaintiff's claims are typical of the claims of members of the Classes. Plaintiff and members of the Classes were harmed by the same wrongful conduct by Defendants in that they paid artificially inflated prices for branded and generic Sensipar and were deprived of the benefits of earlier and more robust competition from less-expensive generic equivalents of Sensipar as a result of Defendants' wrongful conduct.

66.     Plaintiff will fairly and adequately protect and represent the interests of the members of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Classes.

67.     Plaintiff is represented by counsel with experience in the prosecution of class action antitrust litigation and with experience in class action antitrust litigation involving pharmaceutical products.

68.     Questions of law and fact common to the members of the Classes predominate over questions that may affect only individual members of the Classes because Defendants have acted on grounds generally applicable to both Classes. Such generally applicable conduct is inherent in Defendants' wrongful conduct.

69.     Questions of law and fact common to the Classes include:

(a)     Whether Defendants' conspired to delay generic competition in the market for cinacalcet hydrochloride tablets;

(b)     Whether Defendants' agreement was a *per se* violation of federal and state antitrust laws;

(c)     Whether Defendants' agreement violated federal and state antitrust laws under a "quick look" analysis;

(d)     Whether Defendants' agreement violated federal and state antitrust laws under a Rule of Reason analysis;

(e)     To the extent the Rule of Reason applies, whether the relevant product market is cinacalcet hydrochloride tablets;

(f)     To the extent the Rule of Reason applies, whether the relevant geographic market is the United States, including its territories, possessions, and the Commonwealth of Puerto Rico.

(g)     Whether Amgen unlawfully maintained monopoly power through the Defendants' Agreement;

(h)     Whether Defendants' scheme, in whole or in Part, has substantially affected intrastate and interstate commerce;

(i)     Whether Defendants' agreement harmed competition;

(j)     For the Injunction Class, the nature and scope of injunctive relief;

(k)     For the Damages Class, whether Defendants' unlawful agreement, in whole or in part, caused antitrust injury through overcharges to the business or property of Plaintiff and the members of the Class;

(l)     For the Damages Class, the quantum of overcharges paid by the Class in the aggregate.

70.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

71.     Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## VIII.   CLAIMS FOR RELIEF

### <u>FIRST CLAIM FOR RELIEF</u>
**Contract, Combination, and Conspiracy in Restraint of Trade under the Sherman Act § 1
(Against All Defendants)**

72.     Plaintiff incorporates the preceding paragraphs by reference.

73.     An agreement by competing companies to cease competing is "anticompetitive regardless of whether the parties split a market within which both do business or whether they

merely reserve one market for one and another for the other."[17] Defendants here entered into an unlawful market division agreement that restrained competition in the market for branded and generic versions of Sensipar. Their agreement is and was a contract, combination, and/or conspiracy that substantially, unreasonably, and unduly restrained trade in the relevant market, the purpose and effect of which was to:

      (a)    eliminate existing competition between Amgen and Teva and to prevent Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021;

      (b)    delay entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen brand Sensipar monopolizes the relevant market; and

      (c)    raise and maintain the prices that Plaintiff and the Injunction Class Members would pay for Sensipar to and at supra-competitive levels.

74.    The unlawful Amgen-Teva market division agreement is a *per se* violation of the Sherman Act, 15 U.S.C. § 1. Moreover, if the conduct alleged in this Complaint is held subject to a "quick look" analysis, it would satisfy the Supreme Court's test in *California Dental*.[18] That is, "an observer with even a rudimentary understanding of economics could conclude that the [Amgen-Teva agreement] in question would have an anticompetitive effect on customers and markets."[19]

75.    Even if the conduct alleged in this Complaint is held subject to the Rule of Reason, there is no legitimate, non-pretextual, procompetitive business justification for the value Teva received that outweighs the agreements harmful effects. Specifically, under *FTC v. Actavis,*

---

[17] *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990).
[18] *California Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999).
[19] *Id.*

*Inc.*, 133 S. Ct. 2223, 2237 (2013), a patent settlement agreement between a brand and generic manufacturer may be unlawful when the brand provides the generic manufacturer a "large and unjustified" payment in exchange for the generic manufacturer dropping its challenge to the brand manufacturer's patents. This is particularly the case when the size of the payment exceeds any saved or avoided litigation costs.

76.     Here, in exchange for Teva's agreement to delay entering the market until mid-2021 notwithstanding its judgment of non-infringement, under the Amgen-Teva agreement, Teva received at least (a) tens of millions of dollars in profits from sales of generic Sensipar, which it retained and did not pay to Amgen and which reduced Amgen's own revenue from sales of branded Sensipar; (b) an acceleration provision, assuring Teva an ability to resume sales of its generic product if another generic launched before Teva's entry date; and (c) additional value from Amgen's agreement to pay Teva to license certain other Teva products.

77.     Individually and collectively, the value that Amgen transferred and Teva received under their agreement exceeded the costs of continued litigation or any arguably procompetitive benefits—and thus was "large and unjustified." Indeed, given that Teva made the calculated decision to launch at risk, presumably based on its own assessment of the strength of its arguments on appeal, it would have been unlikely to change course by withdrawing from the market just one week later absent some significant inducement by Amgen. Accordingly, the Amgen-Teva agreement is unlawful.

78.     As a direct and proximate result of Defendants' violation of Sherman Act § 1, Plaintiff and the Injunction Class have been injured in their business and property throughout the Class Period.

79.     Plaintiff and the Injunction Class are entitled to injunctive and other equitable relief, pursuant to 15 U.S.C. § 26.

### SECOND CLAIM FOR RELIEF
**Monopolization under the Sherman Act § 2**
**(Against Amgen)**

80.     Plaintiff incorporates the preceding paragraphs by reference.

81.     Amgen entered into an unlawful market division agreement that restrained competition in the market for Sensipar and its AB-rated generic equivalents. The agreement:

(a)     eliminates existing competition between Amgen and Teva and prevents Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021;

(b)     delays entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen monopolizes the relevant market; and

(c)     raises and maintains the prices that Plaintiff and the Injunction Class Members have to pay for Amgen's Sensipar to and at supra-competitive levels.

82.     Amgen's conduct violates Section 2 of the Sherman Act, 15 U.S.C. § 2. Amgen's agreement with Teva perpetuates Amgen's monopoly in the relevant market by excluding competition from Teva, as well as other generics that would have entered pursuant to acceleration clauses in their settlements with Amgen. As a result, Amgen's share of the cinacalcet hydrochloride tablet market is at or near 100%.

83.     As a direct and proximate result of Defendants' violation of Sherman Act § 2, Plaintiff and the Injunction Class have been injured in their business and property throughout the Class Period.

84.     Plaintiff and the Injunction Class are entitled to injunctive and other equitable relief, pursuant to 15 U.S.C. § 26.

### THIRD CLAIM FOR RELIEF
**Conspiracy and Combination in Restraint of Trade under State Law
(Against All Defendants)**

85.     Plaintiff incorporates the preceding paragraphs by reference.

86.     Defendants entered into an unlawful market division agreement that restrained competition in the market for branded and generic versions of Sensipar. Their agreement is and was a contract, combination, and/or conspiracy that substantially, unreasonably, and unduly restrained trade in the relevant market, the purpose and effect of which was to:

(a)     eliminate existing competition between Amgen and Teva and to prevent Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021;

(b)     delay entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen brand Sensipar monopolizes the relevant market; and

(c)     raise and maintain the prices that Plaintiff and the Damages Class Members would pay for Sensipar to and at supra-competitive levels.

87.     The unlawful Amgen-Teva market division agreement is a *per se* violation of the below-listed state antitrust laws. Moreover, if the conduct alleged in this Complaint is held subject to a "quick look" analysis, it would satisfy the Supreme Court's test in *California Dental*.[20] That is, "an observer with even a rudimentary understanding of economics could conclude that the [Amgen-Teva agreement] in question would have an anticompetitive effect on customers and markets."[21]

88.     Even if the conduct alleged in this Complaint is held subject to the Rule of Reason, there is no legitimate, non-pretextual, procompetitive business justification for the value

---

[20] *California Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999).
[21] *Id.* at 770.

Teva received that outweighs the agreement's harmful effects. Specifically, under *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2237 (2013), a patent settlement agreement between a brand and generic manufacturer may be unlawful, when the brand provides the generic manufacturer a "large and unjustified" payment in exchange for the generic manufacturer dropping its challenge to the brand manufacturer's patents. This is particularly the case when the size of the payment exceeds any saved or avoided litigation costs.

89.     Here, in exchange for Teva's agreement to delay entering the market until mid-2021 notwithstanding its judgment of non-infringement, under the Amgen-Teva agreement, Teva received at least (a) tens of millions of dollars in profits from sales of generic Sensipar, which it retained and did not pay to Amgen and which reduced Amgen's own revenue from sales of branded Sensipar; (b) an acceleration provision, assuring Teva an ability to resume sales of its generic product if another generic launched before Teva's entry date; and (c) additional value from Amgen's agreement to pay Teva to license certain other Teva products.

90.     Individually and collectively, the value that Amgen transferred and Teva received under their agreement exceeded the costs of continued litigation or any arguably procompetitive benefits—and thus was "large and unjustified." Indeed, given that Teva made the calculated decision to launch at risk, presumably based on its own assessment of the strength of its arguments on appeal, it would have been unlikely to change course by withdrawing from the market just one week later absent some significant inducement by Amgen. Accordingly, the Amgen-Teva agreement is unlawful.

91.     Defendants' conduct violated the following state antitrust laws:

(a)     Ariz. Rev. Stat. §§ 44-1401, et seq., with respect to purchases in Arizona by the Damages Class Members;

(b)      Cal. Bus. Code §§ 16700, et seq., and Cal. Bus. Code §§ 17200, et seq., with respect to purchases in California by the Damages Class Members;

(c)      D.C. Code Ann. §§ 28-4501, et seq., with respect to purchases in the District of Columbia by the Damages Class Members;

(d)      Hawaii Code § 480, et seq., with respect to purchases in Hawaii by the Damages Class Members;

(e)      740 Ill. Comp. Stat. Ann. 10 / 3, *et seq.*, with respect to purchases in Illinois by the Damages Class Members;

(f)      Iowa Code §§ 553 et seq., with respect to purchases in Iowa by the Damages Class Members;

(g)      Kan. Stat. Ann. §§ 50-101, *et seq.*, with respect to purchases in Kansas by Damages Class Members;

(h)      Me. Rev. Stat. Ann. 10, §§ 1101, et seq., with respect to purchases in Maine by the Damages Class Members;

(i)      Mich. Comp. Laws Ann. §§ 445.772, et seq., with respect to purchases in Michigan by the Damages Class Members;

(j)      Minn. Stat. §§ 325D.49, et seq., with respect to purchases in Minnesota by the Damages Class Members;

(k)      Miss. Code Ann. §§ 75-21-1, *et seq.*, with respect to purchases in Mississippi by members of the Damages Class Members;

(l)      Neb. Code Ann. §§ 59-801, et seq., with respect to purchases in Nebraska by the Damages Class Members;

(m)     Nev. Rev. Stat. Ann. §§ 598A, et seq., with respect to purchases in Nevada by the Damages Class Members, in that thousands of sales of branded and generic versions of Sensipar took place at Nevada pharmacies, purchased by Nevada end-payors at supracompetitive prices caused by Defendants' conduct;

(n)     N.H. Rev. Stat. Ann. §§ 356:1, et seq., with respect to purchases in New Hampshire by the Damages Class Members;

(o)     N.M. Stat. Ann. §§ 57-1-1, et seq., with respect to purchases in New Mexico by the Damages Class Members;

(p)     N.Y. Gen. Bus. L. §§ 340, et seq., with respect to purchases in New York by the Damages Class Members;

(q)     N.C. Gen. Stat. §§ 75-1, et seq., with respect to purchases in North Carolina by the Damages Class Members;

(r)     N.D. Cent. Code §§ 51-08.1-01, et seq., with respect to purchases in North Dakota by the Damages Class Members;

(s)     Or. Rev. Stat. §§ 6.46.705, et seq., with respect to purchases in Oregon by the Damages Class Members;

(t)     S.D. Codified Laws Ann. §§ 37-1, et seq., with respect to purchases in South Dakota by the Damages Class Members;

(u)     Tenn. Code Ann. §§ 47-25-101, et seq., with respect to purchases in Tennessee by the Damages Class Members, with thousands of end-payors in Tennessee paying substantially higher prices for branded and generic versions of Sensipar at Tennessee pharmacies;

(v) Utah Code Ann. §§ 76-10-3101, *et seq.*, with respect to purchases in Utah by Damages Class Members who are either citizens or residents of Utah;

(w) Vt. Stat. Ann. 9, §§ 2453, et seq., with respect to purchases in Vermont by the Damages Class Members;

(x) W.Va. Code §§ 47-18-3, et seq., with respect to purchases in West Virginia by the Damages Class Members; and

(y) Wis. Stat. §§ 133.03, et seq., with respect to purchases in Wisconsin by the Damages Class Members, in that the actions alleged herein substantially affected the people of Wisconsin, with thousands of end-payors in Wisconsin paying substantially higher prices for branded and generic versions of Sensipar at Wisconsin pharmacies.

92. Plaintiff and the Damages Class Members seek damages and multiple damages as permitted by law for the injuries they suffered as a result of Defendants' anticompetitive conduct.

93. Defendants are jointly and severally liable for all damages suffered by Plaintiff and the Damages Class Members.

### FOURTH CLAIM FOR RELIEF
### Monopolization and Monopolistic Scheme under State Law
### (Against Amgen)

94. Plaintiff incorporates the preceding paragraphs by reference.

95. Amgen entered into an unlawful market division agreement that restrained competition in the market for branded and generic versions of Sensipar. The agreement:

(a) eliminates existing competition between Amgen and Teva and prevents Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021;

(b) delays entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen monopolizes the relevant market; and

(c)     raises and maintains the prices that Plaintiff and the Damages Class Members have to pay for Amgen's Sensipar to and at supra-competitive levels.

96.     Amgen's agreement with Teva perpetuates Amgen's monopoly in the relevant market by excluding competition from Teva, as well as other generics that would have entered pursuant to acceleration clauses in their settlements with Amgen. As a result, Amgen's share of the cinacalcet hydrochloride tablet market is at or near 100%.

97.     Amgen's conduct violated the following state antitrust laws:

(a)     Ariz. Rev. Stat. §§ 44-1401, et seq., with respect to purchases in Arizona by the Damages Class Members;

(b)     Cal. Bus. Code §§ 16700, et seq., and Cal. Bus. Code §§ 17200, et seq., with respect to purchases in California by the Damages Class Members;

(c)     D.C. Code Ann. §§ 28-4501, et seq., with respect to purchases in the District of Columbia by the Damages Class Members;

(d)     Hawaii Code § 480, et seq., with respect to purchases in Hawaii by the Damages Class Members;

(e)     740 Ill. Comp. Stat. Ann. 10 / 3, *et seq.*, with respect to purchases in Illinois by the Damages Class Members;

(f)     Iowa Code §§ 553 et seq., with respect to purchases in Iowa by the Damages Class Members;

(g)     Kan. Stat. Ann. §§ 50-101, *et seq.*, with respect to purchases in Kansas by Damages Class Members;

(h)     Me. Rev. Stat. Ann. 10, §§ 1101, et seq., with respect to purchases in Maine by the Damages Class Members;

(i)      Mich. Comp. Laws Ann. §§ 445.772, et seq., with respect to purchases in Michigan by the Damages Class Members;

(j)      Minn. Stat. §§ 325D.49, et seq., with respect to purchases in Minnesota by the Damages Class Members;

(k)      Miss. Code Ann. §§ 75-21-1, *et seq.*, with respect to purchases in Mississippi by members of the Damages Class Members;

(l)      Neb. Code Ann. §§ 59-801, et seq., with respect to purchases in Nebraska by the Damages Class Members;

(m)      Nev. Rev. Stat. Ann. §§ 598A, et seq., with respect to purchases in Nevada by the Damages Class Members, in that thousands of sales of branded and generic versions of Sensipar took place at Nevada pharmacies, purchased by Nevada end-payors at supracompetitive prices caused by Defendant's conduct;

(n)      N.H. Rev. Stat. Ann. §§ 356:1, et seq., with respect to purchases in New Hampshire by the Damages Class Members;

(o)      N.M. Stat. Ann. §§ 57-1-1, et seq., with respect to purchases in New Mexico by the Damages Class Members;

(p)      N.Y. Gen. Bus. L. §§ 340, et seq., with respect to purchases in New York by the Damages Class Members;

(q)      N.C. Gen. Stat. §§ 75-1, et seq., with respect to purchases in North Carolina by the Damages Class Members;

(r)      N.D. Cent. Code §§ 51-08.1-01, et seq., with respect to purchases in North Dakota by the Damages Class Members;

(s)     Or. Rev. Stat. §§ 6.46.705, et seq., with respect to purchases in Oregon by the Damages Class Members;

(t)     S.D. Codified Laws Ann. §§ 37-1, et seq., with respect to purchases in South Dakota by the Damages Class Members;

(u)     Tenn. Code Ann. §§ 47-25-101, et seq., with respect to purchases in Tennessee by the Damages Class Members, with thousands of end-payors in Tennessee paying substantially higher prices for branded and generic versions of Sensipar at Tennessee pharmacies;

(v)     Utah Code Ann. §§ 76-10-3101, *et seq.*, with respect to purchases in Utah by Damages Class Members who are either citizens or residents of Utah;

(w)     Vt. Stat. Ann. 9, §§ 2453, et seq., with respect to purchases in Vermont by the Damages Class Members;

(x)     W.Va. Code §§ 47-18-3, et seq., with respect to purchases in West Virginia by the Damages Class Members; and

(y)     Wis. Stat. §§ 133.03, et seq., with respect to purchases in Wisconsin by the Damages Class Members, in that the actions alleged herein substantially affected the people of Wisconsin, with thousands of end-payors in Wisconsin paying substantially higher prices for branded and generic versions of Sensipar at Wisconsin pharmacies.

98.     Plaintiff and the Damages Class Members seek damages and multiple damages as permitted by law for the injuries they suffered as a result of Amgen's anticompetitive conduct

## FIFTH CLAIM FOR RELIEF
### State Consumer Protection Violations
### (Against All Defendants)

99.     Plaintiff incorporates the preceding paragraphs by reference.

100.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below. As a direct and proximate result of Defendants' anticompetitive, deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the Damages Class Members were deprived of the opportunity to purchase generic versions of Sensipar and were forced to pay higher prices for branded and generic versions of Sensipar.

101.    There is gross disparity between the price that Plaintiff and the Damages Class Members paid for Sensipar compared to what they would have paid for less expensive generic versions of Sensipar, which should and would have been available but for Defendants' unlawful conduct.

102.    By engaging in the foregoing conduct, Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the following state unfair and deceptive trade practices and consumer protection statutes:

### Florida Deceptive & Unfair Trade Practices Act ("FDUTPA")
### Florida Stat. §§ 501.201, et seq.

103.    The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. §§ 501.202(2).

104.    A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

105.    Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint.

106.    Defendants' conduct constitutes an unfair method of competition because Defendants' market division agreement restrained trade in the market for branded and generic versions of Sensipar by (1) eliminating existing competition between Amgen and Teva and preventing Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021; (2) delaying entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen monopolizes the relevant market; and (3) raising and maintaining the prices that Plaintiff and the Damages Class Members have to pay for Amgen's Sensipar to and at supra-competitive levels.

107.    Defendants sold branded and generic versions of Sensipar in Florida, and their conduct had a direct and substantial impact on trade and commerce in Florida. Accordingly, such conduct falls within the prohibitions in Florida Stat. §§ 501.202(2).

### Massachusetts Consumer Protection Act ("MCPA")
### Mass. Gen. L. Ch. 93A, et seq.

108.    The MCPA regulates trade and commerce "directly or indirectly affecting the people of this commonwealth." Mass. Gen. L. Ch. 93A § 9(1).

109.    Under the MCPA, "[a]ny person, who has been injured by another person's use or employment of any method, act or practice" that constitutes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. Ch. 93A §§ 2, 9(1). MCPA § 2(b) provides that these terms are interpreted consistent with Section 5 of the FTC Act (15 U.S.C. § 45(a)), which also prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Mass. Gen. L. Ch. 93A § 2(b); 15 U.S. § 45(a)(1).

110.    Defendants' conduct constitutes an unfair method of competition because Defendants' market division agreement restrained trade in the market for branded and generic versions of Sensipar by (1) eliminating existing competition between Amgen and Teva and preventing Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021; (2) delaying entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen monopolizes the relevant market; and (3) raising and maintaining the prices that Plaintiff and the Damages Class Members have to pay for Amgen's Sensipar to and at supra-competitive levels.

111.    Defendants sold branded and generic versions of Sensipar in Massachusetts, and their conduct had a direct and substantial impact on trade and commerce in Massachusetts. Accordingly, such conduct falls within the prohibitions in Ch. 93A § 2.

### Missouri Merchandising Practices Act ("MMPA")
### Mo. Rev. Stat. 407.020

112.    Under Section 407.020, the MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. 407.020.

113.    The Missouri Attorney General has defined an "unfair practice" as:

> any practice which . . . [o]ffends any public policy as it has been
> established by the Constitution, statutes or common law of this
> state, or by the Federal Trade Commission, or its interpretive
> decisions; or . . . [i]s unethical, oppressive, or unscrupulous; and
> . . . [p]resents a risk of, or causes, substantial injury to consumers.

Mo. Att'y Gen. Reg., 15 CSR 60-8.02.

114.    Defendants' conduct constitutes an unfair method of competition because Defendants' market division agreement restrained trade in the market for branded and generic

versions of Sensipar by (1) eliminating existing competition between Amgen and Teva and preventing Teva from competing with Amgen by selling its generic version of Sensipar until mid-2021; (2) delaying entry of generic versions of Sensipar by companies other than Teva in order to maintain the period in which Amgen monopolizes the relevant market; and (3) raising and maintaining the prices that Plaintiff and the Damages Class Members have to pay for Amgen's Sensipar to and at supra-competitive levels.

115.    Defendants sold branded and generic versions of Sensipar in Missouri, and Defendants' conduct had a direct and substantial impact on trade and commerce in Missouri. Upon information and belief, Defendants also directed advertising and marketing efforts for branded and generic versions of Sensipar in Missouri. Accordingly, Defendants' conduct falls within the prohibitions in the MMPA.

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against All Defendants)**

116.    Plaintiff incorporates by reference the preceding allegations.

117.    To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

118.    This claim is pled by Plaintiff and the Damages Class against all Defendants.

119.    Defendants have financially benefited from overcharges on sales of branded and generic versions of Sensipar, which resulted from the unlawful and inequitable acts alleged in this Complaint. These overcharges were borne by Plaintiff and the Damages Class Members who purchased and/or reimbursed all or part of the purchase price of branded and generic Sensipar. The benefits conferred upon Defendants are substantial and measurable, in that the revenues Defendants have earned due to unlawful overcharges are ascertainable by review of both sales records and the unlawful agreement itself.

120.     There is gross disparity between the price that Plaintiff and the Damages Class Members paid for Sensipar compared to what they would have paid for less expensive generic versions of Sensipar, which should and would have been available but for Defendants' unlawful and inequitable conduct.

121.     Defendants repeatedly and continuously received financial benefits at the expense of Plaintiff and the Damages Class Members through each sale of branded and generic versions of Sensipar at an inflated price.

122.     It would be futile for Plaintiff and the Damages Class Members to seek a remedy from any party with whom they had or have privity of contract. Defendants have paid no consideration to any other person for any of the benefits they received indirectly from Plaintiff and the Damages Class Members.

123.     It would be futile for Plaintiff and the Damages Class Members to seek to exhaust any remedy against the immediate intermediary in the chain of distribution from which they indirectly purchased Sensipar, as those intermediaries cannot reasonably be expected to compensate Plaintiff and the Damages Class Members for Defendants' unlawful conduct.

124.     The financial benefits that Defendants derived rightfully belong to Plaintiff and the Damages Class Members, which paid anticompetitive prices that inured to Defendants' benefit.

125.     It would be inequitable under the unjust enrichment principles of the states listed below for Defendants to retain any of the overcharges that Plaintiff and the Damages Class Members paid for branded and generic versions of Sensipar, which were derived from Defendants' anticompetitive, unfair, and unconscionable methods, acts, and trade practices.

126.     Defendants should be compelled to disgorge all unlawful or inequitable proceeds received by them into a common fund for the benefit of Plaintiff and the Damages Class Members.

127.     A constructive trust should be imposed upon all unlawful or inequitable sums Defendants received, which arise from overpayments for branded and generic versions of Sensipar by Plaintiff and the Damages Class Members.

128.     Plaintiff and the Damages Class Members have no adequate remedy at law.

129.     By engaging in the foregoing unlawful or inequitable conduct, which deprived Plaintiff and the Damages Class Members of the opportunity to purchase lower-priced generic versions of Sensipar and forced them to pay higher prices for branded and generic versions of Sensipar, Defendants have been unjustly enriched in violation of the common law of various states and commonwealths, as outlined below:

**Alabama**

130.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Alabama at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Damages Class as a direct result of the unlawful overcharges and have retained this money. Defendants have benefitted at the expense of the Damages Class from revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. It is inequitable for Defendants to accept and retain the benefits received without compensating the Damages Class.

**Alaska**

131.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Alaska at prices

that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefits bestowed upon them by the Damages Class. Defendants accepted and retained the benefits bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Arizona**

132.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Arizona at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. The Damages Class has been impoverished by the overcharges for branded and generic versions of Sensipar resulting from Defendants' unlawful conduct. Defendants' enrichment and the Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment and the Damages Class's impoverishment, because the Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Damages Class has no remedy at law.

**Arkansas**

133.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Arkansas at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Damages Class as a direct result of the unlawful overcharges and have

retained this money. Defendants have paid no consideration to any other person in exchange for this money. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**California**

134.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in California at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class as a direct result of the unlawful overcharges. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of the Damages Class.

**Colorado**

135.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Colorado at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants have benefitted at the expense of the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Connecticut**

136.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Connecticut at prices that were more than they would have been but for Defendants' actions. Defendants were benefitted in the nature of revenue resulting from unlawful overcharges to the economic

detriment of the Damages Class. Defendants have paid no consideration to any other person in exchange for this benefit. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of the Damages Class.

**Delaware**

137.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Delaware at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. The Damages Class has been impoverished by the overcharges for branded and generic versions of Sensipar resulting from Defendants' unlawful conduct. Defendants' enrichment and the Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Damages Class has no remedy at law.

**District of Columbia**

138.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in the District of Columbia at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Damages Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits.

**Florida**

139.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Florida at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefits bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Georgia**

140.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Georgia at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Hawaii**

141.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Hawaii at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Idaho**

142.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Idaho at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit conferred upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Illinois**

143.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Illinois at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Damages Class. It is against equity, justice, and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**Iowa**

144.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Iowa at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for branded and generic versions of Sensipar, which revenue resulted from anticompetitive prices paid by the Damages Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of the

Damages Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Damages Class.

**Kansas**

145.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Kansas at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Kentucky**

146.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Kentucky at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit conferred upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Louisiana**

147.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Louisiana at prices that were more than they would have been but for Defendants' actions. Defendants have

45

been enriched by revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. The Damages Class has been impoverished by the overcharges for branded and generic versions of Sensipar resulting from Defendants' unlawful conduct. Defendants' enrichment and the Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Damages Class has no other remedy at law.

**Maine**

148.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Maine at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Maryland**

149.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Maryland at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Damages Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Massachusetts**

150.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Massachusetts at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of or appreciated the benefit conferred upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Michigan**

151.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Michigan at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Minnesota**

152.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Minnesota at prices that were more than they would have been but for Defendants' actions. The Damages

Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated and knowingly accepted the benefits bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Mississippi**

153.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Mississippi at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Damages Class as a direct result of the unlawful overcharges. Defendants retain the benefit of overcharges received on the sales of branded and generic versions of Sensipar, which in equity and good conscience belong to the Damages Class on account of Defendants' anticompetitive conduct. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Missouri**

154.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Missouri at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit bestowed upon them by the Damages Class. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Damages Class.

**Montana**

155.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Montana at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Nebraska**

156.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Nebraska at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Damages Class as a direct result of the unlawful overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to the Damages Class.

**Nevada**

157.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Nevada at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. Defendants appreciated the benefits bestowed upon them by the Damages Class, for which they have paid no consideration to any

other person. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

### New Hampshire

158.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in New Hampshire at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Under the circumstances, it would be unconscionable for Defendants to retain such benefits.

### New Jersey

159.     Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in New Jersey at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from arising from unlawful overcharges to the Damages Class. Defendants have paid no consideration to any other person for any of the unlawful benefits they received from the Damages Class with respect to Defendants' sales of branded and generic versions of Sensipar. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Damages Class.

**New Mexico**

160.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in New Mexico at prices that were more than they would have been but for Defendants' actions. Defendants have knowingly benefitted at the expense of the Damages Class from revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. To allow Defendants to retain the benefits would be unjust because the benefits resulted from anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received.

**New York**

161.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in New York at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for branded and generic versions of Sensipar, which revenue resulted from anticompetitive prices paid by the Damages Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of the Damages Class. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**North Carolina**

162.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in North Carolina at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. The Damages Class did

not interfere with Defendants' affairs in any manner that conferred these benefits upon

Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised

revenue created by unlawful overcharges arising from unlawful overcharges to the Damages

Class. The benefits conferred upon Defendants are measurable, in that the revenue Defendants

have earned due to unlawful overcharges are ascertainable by review of sales records.

Defendants consciously accepted the benefits conferred upon them.

**North Dakota**

163.    Defendants unlawfully overcharged Damages Class Members, who made

purchases of or reimbursements for branded and generic versions of Sensipar in North Dakota at

prices that were more than they would have been but for Defendants' actions. Defendants have

been enriched by revenue resulting from unlawful overcharges for branded and generic versions

of Sensipar. The Damages Class has been impoverished by the overcharges for branded and

generic versions of Sensipar resulting from Defendants' unlawful conduct. Defendants'

enrichment and the Damages Class's impoverishment are connected. There is no justification for

Defendants' receipt of the benefits causing their enrichment, because the Damages Class paid

supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for

Defendants to retain any revenue gained from their unlawful overcharges. The Damages Class

has no remedy at law. Under the circumstances, it would be unjust for Defendants to retain such

benefits without compensating the Damages Class.

**Oklahoma**

164.    Defendants unlawfully overcharged Damages Class Members, who made

purchases of or reimbursements for branded and generic versions of Sensipar in Oklahoma at

prices that were more than they would have been but for Defendants' actions. Defendants

received money from the Damages Class as a direct result of the unlawful overcharges and have

retained this money. Defendants have paid no consideration to any other person in exchange for this money. The Damages Class has no remedy at law. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**Oregon**

165.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Oregon at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Damages Class.

**Pennsylvania**

166.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Pennsylvania at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Puerto Rico**

167.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Puerto Rico at prices that were more than they would have been but for Defendants' actions. Defendants have

been enriched by revenue resulting from unlawful overcharges for branded and generic versions of Sensipar. The Damages Class has been impoverished by the overcharges for branded and generic versions of Sensipar resulting from Defendants' unlawful conduct. Defendants' enrichment and the Damages Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment and the Damages Class's impoverishment, because the Damages Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Damages Class has no remedy at law.

**Rhode Island**

168.   Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Rhode Island at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**South Carolina**

169.   Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in South Carolina at prices that were more than they would have been but for Defendants' actions. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from arising from unlawful overcharges to the Damages Class. Defendants realized value from the benefit bestowed upon them by the Damages Class. Under

the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**South Dakota**

170.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in South Dakota at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits without reimbursing the Damages Class.

**Tennessee**

171.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Tennessee at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class. It would be futile for the Damages Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received indirectly from the Damages Class with respect to Defendants' sales of branded and generic versions of Sensipar. It would be futile for The Damages Class to exhaust all remedies against the entities with which the Damages Class has

privity of contract because the Damages Class did not purchase branded and generic versions of Sensipar directly from any Defendant.

**Texas**

172.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Texas at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Damages Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of or appreciated the benefit bestowed upon them by the Damages Class. The circumstances under which Defendants have retained the benefits bestowed upon them by the Damages Class are inequitable in that they result from Defendants' unlawful overcharges for branded and generic versions of Sensipar. The Damages Class has no remedy at law.

**Utah**

173.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Utah at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Vermont**

174.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Vermont at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants accepted the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Virginia**

175.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Virginia at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of the benefit bestowed upon them. Defendants should reasonably have expected to repay the Damages Class. The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to inflate the prices of branded and generic versions of Sensipar. Defendants have paid no consideration to any other person for any of the benefits they have received from the Damages Class.

**Washington**

176.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Washington at

prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of or appreciated the benefit conferred upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**West Virginia**

177.   Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in West Virginia at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Wisconsin**

178.   Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Wisconsin at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants appreciated the benefit bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

**Wyoming**

179.    Defendants unlawfully overcharged Damages Class Members, who made purchases of or reimbursements for branded and generic versions of Sensipar in Wyoming at prices that were more than they would have been but for Defendants' actions. The Damages Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Damages Class. Defendants accepted, used and enjoyed the benefits bestowed upon them by the Damages Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Damages Class.

## IX.    DEMAND FOR JUDGMENT

180.    Accordingly, Plaintiff, on behalf of itself and the proposed Classes, respectfully demands that this Court:

(a)    Determine that this action may be maintained as a class action pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to the Classes, and declare Plaintiff as the representative of the Classes;

(b)    Enter joint and several judgments against the Defendants and in favor of Plaintiff and the Classes;

(c)    Enjoin Defendants from continuing their unlawful market division agreement;

(d)    Grant Plaintiff and the Classes equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment;

(e)     Award the Damages Class damages, and, where applicable, treble,

multiple, punitive, and other damages, in an amount to be determined at trial;

(f)     Award Plaintiff and the Classes their costs of suit, including reasonable

attorneys' fees as provided by law; and

(g)     Award such further and additional relief as the case may require and the

Court may deem just and proper under the circumstances.

## X.     JURY DEMAND

181.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, on behalf of

itself and the proposed Classes, demands a trial by jury on all issues so triable.

Date: February 21, 2019

LABATON SUCHAROW LLP

By: */s/ Ned Weinberger*

**OF COUNSEL:**                         Ned Weinberger (Bar No.  Bar No. 5256)
                                        300 Delaware Avenue
Gregory S. Asciolla                     Suite 1340
Jay L. Himes                            Wilmington, Delaware 19801
Karin E. Garvey                         Tel: (302) 573-2540
Robin A. van der Meulen                 nweinberger@labaton.com
Matthew J. Perez
Domenico Minerva                        Ian Connor Bifferato (Bar No. 3273)
**LABATON SUCHAROW LLP**                **THE BIFFERATO FIRM, P.A.**
140 Broadway                            1007 N. Orange Street, 4th Floor
New York, New York 10005                Wilmington, DE 19801
Tel: (212) 907-0700                     Tel.: (302) 225-7600
Fax: (212) 818-0477                     cbifferato@tbf.legal
gasciolla@labaton.com
jhimes@labaton.com
kgarvey@labaton.com                     *Counsel for UFCW Local 1500 Welfare*
rvandermeulen@labaton.com               *Fund and the Proposed Classes*
mperez@labaton.com
dminerva@labaton.com

Scott A. Martin
Irving Scher
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com
ischer@hausfeld.com

Brent Landau
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
blandau@hausfeld.com

Melinda R. Coolidge
**HAUSFELD LLP**
1700 K Street, NW
Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mcoolidge@hausfeld.com

Roberta D. Liebenberg
Jeffrey S. Istvan
Paul Costa
Adam J. Pessin
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
Fax: (215) 568-5872
rliebenberg@finekaplan.com
jistvan@finekaplan.com
pcosta@finekaplan.com
apessin@finekaplan.com

*Counsel for UFCW Local 1500 Welfare Fund
and the Proposed Classes*